**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| BEAR DOWN BRANDS, LLC, | Case No.: SACV 22-01998-CJC (DFMx) |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS 3-4 [Dkt. 39] |
| BORA SERVICES, S.R.L., | |
| Defendant. | |

## I.     INTRODUCTION & BACKGROUND

In 2013, Plaintiff Bear Down Brands, LLC—a network of consumer brands focusing on premium home, health, and personal care products—launched Bentgo®, an industry-leading food storage brand of premium lunch boxes and food storage products (the "Bentgo Products").  (Dkt. 1 [Complaint, hereinafter "Compl."] ¶¶ 3, 14.)  Plaintiff registered the Bentgo trademark for lunch boxes, and the mark is recognized as the source of high-quality products.  (*Id.* ¶¶ 16, 23.)  In November 2021, Plaintiff entered

into a Distribution Agreement with Defendant Bora Services S.R.L. for Defendant to sell Bentgo Products at or above a Minimum Advertised Price ("MAP") in a particular geographic region (the Caribbean and Central America) to purchasers that would not resell the products outside the designated geographic region.  (*Id.* ¶¶ 4, 60–62.)  Between December 2021 and September 2022, Defendant bought nearly $1 million of Bentgo Products pursuant to the Distribution Agreement.  (*Id.* ¶ 64.)  However, Defendant sold the products to unauthorized resellers, including Fashion Kings, Inc., who now unlawfully advertise and sell Bentgo Products in the United States below the MAP.  (*Id.* ¶¶ 64–66.)  On October 26, 2022, Plaintiff sent Defendant a letter terminating the Distribution Agreement effective immediately.  (*Id.* ¶ 80.)

Plaintiff alleges claims against Defendant for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) tortious interference with contract and/or business relations, and (4) violation of California's Unfair Competition Law ("UCL").[1]  Now before the Court is Defendant's motion to dismiss Plaintiff's claims for tortious interference with contract and violation of the UCL.  (Dkt. 39.)  For the following reasons, Defendant's motion is **DENIED**.[2]

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*,

---

[1] Plaintiff also sued Fashion Kings in New York.

[2] Having read and considered the papers the parties presented, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for June 5, 2023, at 1:30 p.m. is hereby vacated and off calendar.

108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).  To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III.   DISCUSSION

Defendant argues that Plaintiff fails to state claims for tortious interference with contract and violation of the UCL.  The Court disagrees.  "The tort of intentional interference with contract requires allegations of the following elements: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007).

Plaintiff sufficiently alleges these elements.  To adequately allege the first element—a valid contract between the plaintiff and a third party—a plaintiff need not name the specific third party with which it has a contract.  *R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *16 (N.D. Cal. Nov. 11, 2016).  However, a plaintiff must allege that it has a relationship with a specific third party, as opposed to a

generalized group or type of party.  *See id.* (dismissing claim when plaintiff alleged only that it had economic relationship with "major consumers of biodiesel" and did not name specific companies); *see, e.g.*, *Damabeh v. 7-Eleven, Inc.*, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) (dismissing claim when plaintiff alleged that defendant interfered with its "employees and customers" but did "not specifically identify any of these employees and customers").  Here, Plaintiff alleges that it has valid contracts with certain "Authorized Retailers," including Walmart, Target, and Sam's Club, and "Authorized Distributors."  (Compl. ¶ 14.)  Although Plaintiff's allegation that it has contracts with "Authorized Retailers" and "Authorized Distributors" standing alone would likely be insufficient, its allegation that it has contracts with Walmart, Target, and Sam's Club is sufficient to allege the first element.

To allege the second element—the defendant's knowledge of the contract—the plaintiff need not allege that the defendant knew about the particular contract in question.  Rather, it is sufficient to allege that the defendant knew the plaintiff had contracts with a certain group or type of party.  *See Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001) (explaining at summary judgment that intent to interfere with a contract "can certainly be inferred if the defendant knows that contractual relations with a third party exist, but does not know the specific identity of the contractual party").  Here, Plaintiff alleges Defendant knew about its contracts with Authorized Retailers and Authorized Distributors to sell Bentgo Products.  (Compl. ¶ 131.)  That allegation is sufficient at this stage.

To allege the third element—the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship—it is sufficient to allege that the defendant knew that interference with the plaintiff's contract with a third party was certain or substantially certain to occur as a result of its actions.  *See Sebastian Int'l*, 162 F. Supp. 2d at 1205.  Here, Plaintiff alleges that Defendant "acted with a wrongful

purpose" and sold Bentgo Products to unauthorized retailers including Fashion Kings to disrupt Plaintiff's contractual relationships with Authorized Retailers and Distributors. (Compl. ¶¶ 72, 132–34.)  As support for this allegation, Plaintiff alleges that when it asked Defendant to verify the entities to which it sold Bentgo Products, Defendant sent Plaintiff "a falsified document" indicating it had not sold the products to Fashion Kings. (*Id.* ¶ 72.)  Only after Plaintiff explained that Fashion Kings could not have bought the products from any other source did Defendant admit that it sold Bentgo Products to Fashion Kings.  (*Id.* ¶ 73.)  Plaintiff's allegations that Defendant sold products to Fashion Kings with wrongful purpose and deceived Plaintiff about those sales plausibly allege that Defendant committed intentional acts designed to disrupt Plaintiff's contractual relationships or which Defendant knew were substantially certain to disrupt Plaintiff's contractual relationships.

Plaintiff also sufficiently alleges the fourth element, actual breach or disruption of the contractual relationship.  Plaintiff alleges that its contracts with Walmart, Target, and Sam's Club were disrupted because Defendant's actions caused Bentgo Products to be sold in the United States by unauthorized retailers and Plaintiff was no longer able to control the quality, customer service, or MAP applicable to the Bentgo Products. (Compl. ¶¶ 38–55, 82–85, 108.)  In other words, Plaintiff alleges that it had contracts with Authorized Retailers in the United States that set out particular rules regarding quality, customer service, and MAP, but Defendant's sale to Fashion Kings who then also sold the same products in the United States prevented Plaintiff from controlling those factors.  This is sufficient to allege the fourth element.  *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1204 (N.D. Cal. 2014) (noting that "it is the contractual relationship, not any term of the contract, which [the tort] protect[s] against outside interference") (quoting *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 590–91 (1990)).

Finally, as to the fifth element, Plaintiff alleges that it has been damaged.  (Compl. ¶ 135.)  Dismissal of Plaintiff's intentional interference with contract claim is not warranted.

Because Plaintiff has sufficiently alleged intentional interference with contract, it has also sufficiently alleged a UCL violation.  "The UCL provides a cause of action for parties injured by any unlawful, unfair or fraudulent business act or practice."  *CRST,* 479 F.3d at 1107.  The UCL "borrows violations from other laws by making them independently actionable as unfair competitive practices."  *Korea Supply Co. v. Lockheed Martin Corp.*, 131 Cal. 4th 1134, 1143 (2003) (cleaned up).  "[A] tortious interference with contract claim can serve as a predicate 'unlawful' business practice for UCL purposes."  *Moore*, 73 F. Supp. 3d at 1205 (citing *CRST*, 479 F.3d at 1107) (holding that allegations of tortious interference with contract adequately alleged UCL violation).

**IV. CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is **DENIED.**  Defendant shall file an answer to Plaintiff's Complaint by June 8, 2023.

DATED:     May 25, 2023

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE